Thank you. Good morning, Your Honor, and may it please the Court. My name is Corey Foreman, and I represent the defendant, Stanislaw Pszeniczny. I'd like to first focus the argument on what is the core of this case, which is the encounter that the defendant had with Customs Border Patrol. And whether or not that encounter was an admission and inspection, and whether it was a bite being inspected and admitted, if that constitutes consent. I submit that both answers are yes. Now, it is true, and I concede, that there is in fact no statute or regulation, as the government points out, that gives CBP directly the authority to provide consent to reapply for admission for a deported non-citizen who has not remained outside the country for the requisite period of time. With that said, CBP does in fact have the inherent authority to do so, and I think it's important to examine the situation in the case within the context of the fact that the Illegal Immigration Responsibility and Immigrant Reform Act of 1996 was created, and then seven years later, the Attorney General functions under the INA that refers to the Attorney General constantly, was reformed. So we have a case called Martis, right, which says that even if there were an implicit constructive delegation, no express consent to reapplication for admission could be found where a deported alien reenters without informing the INS officials of his prior deportations. And that didn't happen here. Well, Martis, just factually, is a much different case. Martis is a case where the individual goes up, he walks up to the border, he looks into the window where a CBP agent is. In fact, I don't think the case itself ever, it's clear whether or not a CBP official is even there. He waves, gets no acknowledgement, and walks through. But to answer Your Honor's question, Martis, again, I do think it is relevant. I'm not saying that... Why isn't it foreclosure argument in light of... Because I think the enactment of the Homeland Security Act of 2002 and the delegation of responsibilities from the Attorney General to the Department of Homeland Security changes that. And that statute did three things. It created the Department of Homeland Security, one. Two, it created CBP. And three, most significantly, it gave DHS, Department of Homeland Security, the authority to delegate its responsibilities to CBP. So with the regulations at the time of Martis were clear that the Attorney General provides certain... They provide the consent. They have the authority. The Department was given that sense. Because the Homeland Security Act, it either created the Department having sole authority over the enforcement of our immigration laws, or shared outside the Department of Justice and the immigration court system. So now if the Department has that authority, and if the Department of Homeland Security now has that authority and can delegate that authority to CBP, and I think we see that in the regulations... But then doesn't that just put you in the framework that Martis assumed? So sort of assume there's a delegation. You can't have... It says no express consent to reapplication can be found where the deported alien reenters without informing the INS officials of his prior deportation. I do think it is relevant that Martis was decided before the Homeland Security Act and before the Department took over those functions. I do think that is a significant issue in the case. That because now it's the Department that has that authority, that delegates that authority to CBP. We see it in the regulations at 8 CFR 235.1, CBP has the authority to inspect and admit. So if we're going to argue on the assumption that this was a procedurally regular inspection and admission under the BIA case law, then the next question, the most important question, is what's the consent? Again, the Department delegating that authority, and if the regulations now give the Department the power to provide the consent for a previously deported non-citizen, then I think looking at 8 CFR 212, which the government cites in their briefing, is important. Because 212, it provides the consent procedures for anyone who seeks to reapply. It also specifically divides what procedures for what port of entry. It makes the procedures, I'm sorry, different for a port of entry, for USCIS admitting someone, for the Department of State issuing a visa. And it is, in fact, discretionary. Because if you look at 8 CFR 212.2, and this goes to the form requirement that the government brings up. The form is required to notify someone, and you have to file an I-212. And another pivotal question is, is that form required? Sometimes it is, sometimes it isn't. The way if you look at 212.2, it specifically states that a form where required, where required. And that concerns the port of entry. So if a non-citizen is entering through a port of entry, a form is not always required. Where in other contexts it is. The language is very clear in those regulations, that sometimes it's mandatory. For instance, a consulate. If an individual is applying for a visa at the consulate, there it says that they must file the appropriate form. The catch-all provision at 212.2G says, other than what we've previously stated in A through F. And I apologize, 212F is the port of entry regulation, 212.2F. But G says anything that's not addressed in A through G requires a form. 212.2F clearly states where required that makes this matter discretionary. So that's where I think Martis is distinction. And on that note, Beacom is also distinct in the fact that that involved a fraudulent passport. And I know I only have a few seconds left, and I do want to raise it on the jurisdictional argument. And I know this court has been down the jurisdiction road on NTAs quite a bit. I do think it's important to bring up that the session law argument has not been addressed by that court. And the 309C-2, the fact that Congress brought up and mentioned that prior, that cases prior to the enactment of the 1996 immigration law were to be treated, or NTA, that notice of hearings that were issued under the old law, conferred jurisdiction to be treated under charging documents at 1229 as to conferring jurisdiction, indicates that Congress was aware of the jurisdictional requirements under the old law and implemented that. So it is the statutory glue is what I submit that the Southern District of New York, to use their language, said it was not. I do believe that that statutory glue exists on that argument. Thank you. Good morning, Your Honors, and may it please the court. My name is Andrew Grubin, and I represent the United States. The defendant's arguments are foreclosed by this court's binding precedent. On the defendant's jurisdictional arguments, to the extent that the court wished to revisit this court's prior decisions, there are already at least two other panels considering these exact same arguments, United States v. Sukulanda, 22-1197. That was argued about a year ago. And United States v. Maldonado, which is 22-1077. An oral argument in that case was at the beginning of this year. And in those cases, these arguments were made at the district court level, and not either in the context of a motion for reconsideration, where they've been waived, or for the first time on appeal. So you're saying we're in a queue? Yes, Your Honor. And therefore, this court need not and respectfully should not reach the merits of any of the defendant's arguments. But the arguments are also meritless. They are meritless for the reasons that this court has already explained in Benegas-Gomez, in Cherry v. Garland, in United States v. Martis, in this court's decisions reaffirming that U.S. v. Martis is good law following the reorganization of the Department of Homeland Security, and all of their different progeny. And so for those reasons, Your Honors, the defendant's conviction should be affirmed. And unless Your Honors have any questions for me, I'll respectfully rest on the papers. Thank you. Briefly, I would just ask the court when it comes to this idea of where a form is required, or where that advance consent is required, I urge the court to look at the different wording in each of the regulations. 212B is clearly discretionary. I'm so sorry, sir. I'm having a hard time hearing you.  212B, regarding non-citizens applying to consular officers abroad for non-immigrants, say an alien or non-citizen may apply for such permission by submitting an application. 212.2C, special provisions for an applicant for a non-immigrant visa under Section K of the INA. An applicant for a non-immigrant visa must file the application on the form designated by the USCIS. Mandatory at 212D, an applicant for an immigrant visa at the Department of State must file the waiver request. And going on and on, F, discretionary. A non-citizen must file that application where required. Again, that is a discretionary component. I think there's, considering the volume of travelers that CBP gets at their port of entry on a daily basis. And again, Martis is a factually distinct case in this. There was no, you know, there's, I mean, I know they found that there was an inspection and admission, or I don't know, actually that issue wasn't addressed. It was about consent, but there was no encounter with the CBP agent in that. There was no direct contact with the CBP agent and the non-citizen at that port of entry where the CBP agent actually waved the individual through, giving them the consent that was needed. Thank you both, and we'll take the matter under advisement.